IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANIE M. VALENTIN, ) | CASE NO. 4:25-CV-00021-DAP |
| ) | |
| Plaintiff, ) | DAN AARON POLSTER |
| ) | UNITED STATES DISTRICT JUDGE |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF ) | JENNIFER DOWDELL |
| SOCIAL SECURITY, ) | ARMSTRONG |
| ) | |
| Defendant. ) | **REPORT AND RECOMMENDATION** |
| ) | |

**I.     INTRODUCTION**

Plaintiff Janie M. Valentin ("Ms. Valentin") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (*See* ECF non-document entry dated January 7, 2025). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

**II.    PROCEDURAL HISTORY**

On May 19, 2021, Ms. Valentin filed her application for DIB, alleging an onset date of January 23, 2020. (Tr. 286). Ms. Valentin's application related to her right shoulder joint pain and right shoulder impingement. (Tr. 317).

The Social Security Administration ("SSA") denied Ms. Valentin's application initially and upon reconsideration. (Tr. 95-96). Ms. Valentin requested a hearing before an administrative law judge ("ALJ"). (Tr. 157). The ALJ held a telephonic hearing on April 13, 2022, at which Ms. Valentin was represented by counsel. (Tr. 59). Ms. Valentin testified, as did an independent

1

vocational expert ("VE"). On May 3, 2022, the ALJ issued a written decision, finding that Ms. Valentin was not disabled. (Tr. 106).

Ms. Valentin requested that the Appeals Council review the ALJ's decision. (Tr. 227). On April 20, 2023, the Appeals Council remanded the case to the ALJ for further proceedings, determining that the ALJ failed to adequately evaluate the opinion of a state agency psychological consultant when formulating Ms. Valentin's residual functional capacity ("RFC"). (Tr. 126).

Following remand, the ALJ held another hearing on September 13, 2023, at which Ms. Valentin and the VE testified. (Tr. 36). On November 22, 2023, the ALJ issued a written decision again finding that Ms. Valentin was not disabled. (Tr. 14). The ALJ's decision became final on November 19, 2024, when the Appeals Council declined further review. (Tr. 1).

On January 7, 2025, Ms. Valentin filed her Complaint, challenging the Commissioner's final decision. (ECF No. 1). Ms. Valentin asserts a single assignment of error:

(1)  The ALJ's RFC was not supported by substantial evidence due to the failure to consider the impact of Plaintiff's bowel impairments on her work-related activities.

(ECF No. 9, PageID # 1142).

### III. BACKGROUND[1]

#### A. Personal, Educational, and Vocational Experience

Ms. Valentin was born in 1972 and was 47 years old on the alleged onset date. (Tr. 286). She has a high school diploma. (Tr. 318). Ms. Valentin is not married. (Tr. 43). She has three children, two of whom are adults. *Id*. She has prior work experience as a machine operator, office clerk, car assembler, circuit board assembler, and forklift operator. (Tr. 28).

---

[1] The ALJ found that Ms. Valentin suffered from a number of physical and mental impairments. In this proceeding, Ms. Valentin challenges only the ALJ's treatment of her bowel impairment. Accordingly, I will limit my discussion to evidence regarding that condition.

2

B. **Relevant Hearing Testimony**

1. *Ms. Valentin's Testimony*

At the September 13, 2023 hearing, Ms. Valentin testified that she experiences chronic diarrhea five to six times per day and that she needs to remain close to a bathroom as a result. (Tr. 46). She further testified that she has experienced accidents when not close to a bathroom, which forced her to come home and change clothes. *Id*. Ms. Valentin testified that she has been experiencing bowel issues for about two years. *Id*. She also testified that she has chronic stress incontinence, which affects her daily. (Tr. 51-52). She further testified that doctors have informed her that her stress incontinence is caused by her colitis. (Tr. 52).

2. *Vocational Expert's Testimony*

At the September 13, 2023 hearing, the VE testified that a hypothetical individual with Ms. Valentin's age, education, job history, and RFC could perform work as a marker, garment sorter, or classifier if limited to light work. (Tr. 54-55). The VE further testified that, if the hypothetical individual were limited to sedentary work, the hypothetical individual could perform work as an ink printer, patcher, or document preparer. (Tr. 55). However, the VE also testified that it would be work preclusive if the hypothetical individual required four unscheduled 15-minute breaks per workday or would be off-task 20 percent of the time and absent from work three times per month. (Tr. 56).

C. **Relevant Opinion Evidence**

1. *State Agency Medical Examiners*

On July 25, 2021, Steve McKee, M.D., a state agency medical examiner, opined that Ms. Valentin had a medically determinable impairment with respect to her right shoulder, but did not opine that she had any medically determinable impairment or limitations related to her bowel problems. (Tr. 90-92). On October 22, 2021, W. Scott Bolz, M.D., concurred with Dr. McKee's

3

findings on reconsideration. (Tr. 102).

      D.      **Relevant Medical Evidence**

On July 23, 2021, Ms. Valentin was seen by Elizabeth Zinni, NP, complaining of weight loss, dizziness, sweating, nausea, and abdominal pain. (Tr. 668). She reported that eating small meals made her feel nauseous and full immediately. *Id*. She denied experiencing melena, constipation, or diarrhea. *Id*. On examination, Ms. Valentin displayed abdominal pain in her right upper quadrant. *Id*. Labs were drawn, and she was referred for a CT scan of her abdomen and pelvis. *Id*.

On August 9, 2021, Ms. Valentin presented to Joey Annichine, NP, complaining of abdominal pain, nausea, diarrhea, and fatigue. (Tr. 667). It was noted that Ms. Valentin's blood work following her July 23, 2021, visit was unremarkable. *Id*. Ms. Valentin reported that she had not been able to keep food down and that she had pain in her right upper abdominal quadrant. *Id*. On examination, Ms. Valentin had lost three pounds from the previous week. *Id*. Her abdomen was soft with hyperactive bowel sounds. *Id*. Ms. Valentin also displayed a moderate amount of pain with palpation of the right upper quadrant. *Id*. She was prescribed Zofran. *Id*. On August 13, 2021, Ms. Valentin had a CT scan of her abdomen and pelvis, which was unremarkable. (Tr. 666). An ultrasound of her right upper quadrant on September 8, 2021 was likewise unremarkable. (Tr. 665).

On October 13, 2021, Ms. Valentin presented to the Liberty Gastroenterology Group for evaluation of abdominal pain, abnormal liver enzymes, and weight loss. (Tr. 729). On examination, she displayed positive bowel sounds and tenderness in the right upper quadrant without visible herniations. *Id*. She was diagnosed with other specified noninfective gastroenteritis and colitis. *Id*. It was also noted that Ms. Valentin had lost 60 pounds from a prior visit in December 2017. *Id*.

On November 9, 2021, Ms. Valentin underwent an endoscopy, which revealed moderate erosive gastritis. (Tr. 731). Biopsies were taken for H. pylori and celiac disease. *Id*. She was instructed to begin taking Prilosec and was given diet recommendations for gastroesophageal reflex disease (GERD). (Tr. 731-32). A hepatobiliary scan on November 22, 2021 was unremarkable. (Tr. 748).

Ms. Valentin had a follow-up visit at Liberty Gastroenterology Group on January 12, 2022. (Tr. 734). She reported that her symptoms were mildly improved. *Id*. On examination, her abdomen was soft, nontender, and nondistended. *Id*.

On May 17, 2022, Ms. Valentin reported experiencing diarrhea for the previous three to four weeks. (Tr. 1028). She denied rectal bleeding and melena. *Id*. She reported occasional nausea but did not report vomiting. *Id*. On examination, her abdomen was soft, without masses, tenderness, or swelling. *Id*. A stool culture was taken. *Id*. At a follow-up visit on October 4, 2022, Ms. Valentin continued to report frequent loose bowel movements. (Tr. 1029).

On April 5, 2023, Ms. Valentin reported ongoing diarrhea but denied abdominal pain, rectal bleeding, or melena. (Tr. 1027). She was diagnosed with ulcerative colitis, GERD, and chronic diarrhea. *Id*.

**IV. THE ALJ'S DECISION**

The ALJ first determined that Ms. Valentin met the insured status requirements of the Social Security Act through March 31, 2025. (Tr. 19). The ALJ next determined that Ms. Valentin had not engaged in substantial gainful activity since January 23, 2020, the alleged onset date. *Id*. The ALJ further determined that Ms. Valentin had the following severe impairments: obesity, degenerative disc disease of the cervical spine with spondylosis and cervical headaches, degenerative disc disease of the thoracic spine, right shoulder impingement syndrome and AC joint osteoarthritis, degenerative joint disease of the right hand, bilateral carpal tunnel syndrome,

5

colitis, depressive disorder, adjustment disorder with mixed anxiety and depressed mood, and a specific learning disorder of impaired reading. (Tr. 20). However, the ALJ also determined that none of Ms. Valentin's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. *Id*.

The ALJ next determined that Ms. Valentin had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), but she cannot climb ladders, ropes, or scaffolds, she must avoid exposure to unprotected heights and hazardous machinery, she can do commercial driving, and she can no more than occasionally climb ramps/stairs, balance, stoop, and reach overhead. She can frequently reach in all other directions, and she can frequently handle, finger, kneel, crouch, and crawl. She can perform simple routine tasks, and make simple work-related decisions, but not at a production rate pace, she is limited to occasional interaction with supervisors, coworkers, and the general public, and she can tolerate few changes in a routine work setting.

(Tr. 25).

The ALJ further determined that Ms. Valentin was unable to perform any past relevant work. (Tr. 28). The ALJ determined, however, that jobs existed in significant numbers in the national economy that Ms. Valentin could perform, including work as a merchandise marker, garment sorter, and classifier. (Tr. 28-29). Accordingly, the ALJ found that Ms. Valentin was not disabled. (Tr. 29).

V.  **LAW & ANALYSIS**

   A.  **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

6

(*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

B. **Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform.

8

20 C.F.R. §§ 404.1520(g) and 404.1560(c). *See Abbott*, 905 F.2d at 923.

    C.  **Analysis**

In her sole assignment of error, Ms. Valentin argues that the ALJ's RFC was not supported by substantial evidence because the ALJ failed to adequately account for the impact that her bowel condition had on her ability to work. In particular, Ms. Valentin argues that the ALJ erred in failing to include a limitation that Ms. Valentin would need to take frequent bathroom breaks which, she asserts, would have been work-preclusive.

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

Ms. Valentin argues that the ALJ failed to incorporate limitations relating to her bowel condition without sufficient explanation. In support, Ms. Valentin points to the following paragraph from the ALJ's decision, which she argues does not adequately explain the ALJ's reasoning:

> Similarly, although the claimant testified upon remand in September 2023 that her upper extremity pain and dysfunction have worsened, that her colitis requires proximity to a bathroom due to the urgent [*sic*] to go 6 times per day on average, that she has a debilitating headache 3 times

9

> per month, and that she has developed urinary stress incontinence that limits her ability to engage in strenuous tasks, she acknowledged improvement in her mental health, she said that she continued to crochet blankets and hats, and she reported continuing to drive and to complete ordinary self-, household-, and child-care tasks. While the claimant reported doing so at her own pace, with frequent breaks, and with an occasional daytime nap, the medical evidence of record shows resolution of the claimant's cervical radiculopathy, no worsening in her carpal tunnel or spinal impairments, and unchanged right shoulder arthritis, with some inflammation.

(Tr. 27).

It is true that the ALJ's reasoning in this paragraph largely focuses on other impairments and does not specifically explain why Ms. Valentin's statements regarding her need to use the bathroom are unpersuasive. However, a reviewing court reads the ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). Earlier in the decision, the ALJ acknowledged Ms. Valentin's testimony that she experienced diarrhea four to five times per day. (Tr. 23). However, the ALJ found that "the record does not support the frequency or severity of . . . colitis symptoms asserted by the claimant." (Tr. 27). Elsewhere in the decision, the ALJ noted that Ms. Valentin reported no colitis-related complaints during a gastrointestinal consult in October 2021; that a November 2021 endoscopy showed only moderate erosive gastritis; and that Ms. Valentin reported improvements in her symptoms during a 2022 follow-up visit. (Tr. 26-27). Earlier, at Step Two, the ALJ found that Ms. Valentin's colitis did not equal a listing because she had not required surgical invention and because the condition had not caused marked limitations in her daily, social, or attentive functioning. (Tr. 20). The ALJ concluded that Ms. Valentin's colitis, combined with her other impairments, warranted precluding her from exposure to extraordinary hazards and simple work performed at a non-production rate pace, but that additional limitations were not warranted. (Tr. 27-28).

While the ALJ could perhaps have included a more fulsome discussion of Ms. Valentin's bowel condition, the ALJ addressed both Ms. Valentin's testimony and the objective medical

10

evidence, including evidence that her condition was moderate in severity and that she reported improvement at times. In light of those records, substantial evidence supports the ALJ's conclusion that Ms. Valentin's bowel condition imposed certain limitations upon her but that a bathroom requirement was not warranted. Notably, Ms. Valentin has not cited to any evidence, other than her own testimony, establishing that she needs to use the bathroom five to six times per day. The ALJ thus did not err in failing to include a bathroom requirement in the RFC. *See Hess v. Comm'r of Soc. Sec. Admin.*, No. 1:24-cv-679, 2024 WL 4710894, at *9 (N.D. Ohio Nov. 7, 2024) (holding that ALJ did not err in failing to include specific bathroom limitations in RFC, stating, "[t]hat [petitioner] disagrees with the ALJ's chosen limitations or believes additional limitations should have been included does not mean that the ALJ erred or that her RFC determination lacks support from substantial evidence"); *Stuber v. Comm'r of Soc. Sec.*, No. 1:17 CV 1501, 2018 WL 4283047, at *6 (N.D. Ohio Sept. 7, 2018) (holding that ALJ did not err in failing to include limitation relating to bathroom breaks where evidence indicated bowel impairment was not extreme and claimant did not provide any opinion evidence on the issue).

Ms. Valentin argues that the ALJ should have given more weight to medical records showing that she had a history of bowel problems, experienced abdominal pain and diarrhea, and was diagnosed with colitis and moderate gastritis. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). While the evidence Ms. Valentin relies on could perhaps have supported a more-restrictive RFC, substantial

evidence also supports the ALJ's conclusion.

Additionally, to the extent Ms. Valentin relies on her testimony regarding her need for frequent bathroom breaks, a plaintiff does not demonstrate that the ALJ violated governing regulations simply by pointing to her own testimony regarding her impairments, as "an ALJ is not required to accept a claimant's subjective complaints." *Jones*, 336 F.3d at 476. Moreover, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). Here, the ALJ found that Ms. Valentin's testimony regarding the intensity, persistence, and disabling effects of her symptoms "lack[ed] objective and overall record support." (Tr. 25).

Finally, Ms. Valentin argues that the ALJ erred in his questions to the VE, as the hypotheticals the ALJ posed did not reference Ms. Valentin's needs for bathroom breaks. But "an ALJ is only required to include in his hypothetical individual to the VE the limitations that he finds credible." *Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *8 (N.D. Ohio Mar. 20, 2018); *see also Koukouvitakis v. Comm'r of Soc. Sec.*, No. 1:19-CV-02875-BYP, 2020 WL 9854962, at *10 n. 5 (N.D. Ohio Nov. 24, 2020), *report and recommendation adopted*, 2022 WL 202670 (N.D. Ohio Jan. 24, 2022) ("it is 'well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact' into the hypothetical question") (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Because the ALJ found that a bathroom restriction was not warranted, the ALJ was not required to include that limitation in his hypothetical questions to the VE. Ms. Valentin's sole assignment of error is therefore without merit.

## VI.   RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

Dated: September 16, 2025  /s *Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v.*

13

*Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).